498 A.2d 957

**COMMONWEALTH of Pennsylvania**

v.

**Thomas CRAIG, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1985.
Filed Sept. 20, 1985.

Michael A. Klimpl, Doylestown, for appellant.

Colin M. Jenei, Assistant District Attorney, Newtown, for Commonwealth, appellee.

Before WICKERSHAM, BECK and CERCONE, JJ.

CERCONE, Judge:

On March 24, 1980, pursuant to a plea agreement, appellant entered a plea to second degree murder and robbery. Appellant was sentenced to life imprisonment on April 3, 1980, and to a concurrent term of ten to twenty years on the robbery charge. At the time of his guilty plea and sentencing, appellant was represented by the Bucks County Public Defender's Office.

In January, 1983, appellant filed a petition for relief under the Post Conviction Hearing Act (PCHA),[1] challenging the propriety of the plea. Private counsel was appointed to represent appellant. Pursuant to the petition, a hearing was held on January 13, 1984, at which time appellant's request for relief was denied. This appeal followed.

On appeal, appellant is claiming that his trial counsel was ineffective for failing to seek the suppression of inculpatory statements he had given during a custodial interrogation. He challenges the admissibility of those statements by arguing that he had not been given *Miranda*[2] warnings before making his initial statement, which rendered inad-

---

1. Act of May 13, 1982, P.L. 417, No. 122, § 2; 42 Pa.C.S.A. § 9541 *et seq.*

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

missible that statement and tainted subsequent post-warning statements. Appellant also argues that he should have been provided private defense counsel because a secretary in the Public Defender's office was the estranged wife of the prosecuting police officer. Having examined the record, we are satisfied that neither claim has merit and, accordingly, we affirm the order of the court below.

To better understand the holding in this case, we will recite the facts as found by the lower court. This will include evidence of the defense which, read in the context of the overall record, is uncontradicted. *See Commonwealth v. Dixon,* 475 Pa. 17, 20 n. 1, 379 A.2d 553, 554 n. 1 (1977).

At the hearing it was established and we found as specific facts that the defendant arrived at Warrington Township Police Headquarters on November 7, 1979 at some time shortly after 12 noon. He had been at work that morning and was requested to go to headquarters by a member of the Warrington Township police department. He was not under arrest and could have refused to go to headquarters had he wished. At headquarters he was met by detectives John Rice and John Mullen, both of whom were Bucks County detectives employed by the Bucks County District Attorney's office. He was not then arrested and was free to leave at any time he wished. The officers advised the defendant that they were investigating the murder involved in this case. Defendant was told that the victim's body had been found in Easton and that the officers had some information that the defendant had likewise been in Easton. No questions had been asked nor had the defendant been asked to give a statement of any kind. The defendant then advised the officers that he would tell them what happened. The officers then told the defendant not to say anything and they then proceeded to advise him of his various constitutional rights as mandated by *Miranda v. Arizona.* The defendant then gave an oral statement of an inculpatory nature. When that occurred, the defendant was placed under arrest and he was again advised of his rights under *Miranda,* both orally and in writing. Defendant acknowl-

edged on both occasions that he understood these rights and after the rights had been given the second time he then gave a written statement in the presence of a court reporter. When the two statements were given the defendant had been neither threatened nor assaulted and was in complete control of his faculties. He gave intelligent answers to all questions and manifested no effects of any drugs or alcohol. He was alert and responsive, in fact he had worked that morning.

In addition, both a Commonwealth witness and appellant testified that upon reaching the police station, appellant made all statements in question after being taken into a room, with the door closed, by the two detectives. Appellant never requested to leave but he testified that he didn't really feel he could leave because of the way the detectives spoke with authority.

■ Based on the testimony presented at the P.C.H.A. hearing, the lower court determined that the appellant was not placed under arrest until after he had made the first inculpatory statement and, therefore, was not entitled to *Miranda* warnings prior to that time. Such a conclusion evidences a misunderstanding of what constitutes a "custodial interrogation". The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. *See Commonwealth v. Chacko*, 500 Pa. 571, 577–80, 459 A.2d 311, 314 (1983). *See also Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

■ Appellant had been picked up at his place of work by a police officer and transported to police headquarters. He was met by two detectives, taken into an interrogation room and the door was closed. At that point, appellant was told that he was suspected of being involved in a recent murder. Although appellant had not yet been asked a direct question, we find this scenario is sufficient to constitute custodial interrogation or its functional equivalent as defined in

*Rhode Island v. Innis, supra.* Appellant was entitled to *Miranda* safeguards at the time he entered the interrogation room with the two detectives. The following opinion is predicated on that factual premise.

 In Pennsylvania, there exists a well-established presumption that counsel is effective, and the burden of establishing ineffectiveness of counsel rests on the appellant. *See Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). Equally well settled is the proposition that counsel will not be deemed to be ineffective for failing to assert a meritless claim and that counsel's action or inaction must be prejudicial to the defendant for a finding of ineffectiveness to arise. *Commonwealth v. Vesay*, 318 Pa.Super. 320, 326, 464 A.2d 1363, 1367 (1983). *See also Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Thus, it has been established that the threshold question in this Court's inquiry is whether the underlying claim is of arguable merit. *Commonwealth v. DiVentura*, 270 Pa.Super. 471, 473, 411 A.2d 815, 816 (1979). Herein, that claim turns to whether the admission of appellant's inculpatory statements was proper.

Appellant asserts that his incriminating statement (to the effect that he would tell the detectives everything they wanted to know) was given before he had been warned of his constitutional rights and could have been suppressed had trial counsel made the proper motion. He further asserts that his post-warning oral and written statements could have been suppressed also because they were "tainted" by the earlier, unwarned statements.[3] Finally, appellant argues that the failure of trial counsel to move to suppress these statements induced him to plead guilty and constituted ineffective assistance of counsel.

██ Although we agree that the first inculpatory statement constituted a technical violation of *Miranda* and could have been suppressed, we do not believe that this requires a disturbance of the verdict. We reach this conclusion based

**3.** While appellant does not cite it, he is obviously referring to the holding in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and its progeny.

548

on our judgment that the subsequent statements, which were more detailed and comprehensive, were not suppressible and thereby rendered any consideration of the initial statement harmless. *See Commonwealth v. Garvin,* 335 Pa.Super. 560, 566, 485 A.2d 36, 39 (1984) (*en banc*) ("A finding that appellant is entitled to a new trial cannot be made unless it can be concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized, resulting in prejudice to the defendant.) *See also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Appellant contends that these later statements were tainted by the illegality found in the eliciting of the original admission. This issue is controlled by the Pennsylvania Supreme Court's decision in *Commonwealth v. Chacko, supra,* wherein the court stated:

It is well established that a confession obtained after a suspect has been adequately advised of his constitutional rights is not *ipso facto* inadmissible because an earlier confession or inculpatory statement was made in the absence of a warning as to those rights. (citations omitted) However, the burden is on the Commonwealth to demonstrate that the subsequent statement was not the product of the exploitation of the original illegality and was obtained under circumstances sufficiently distinguishable to purge it of its original taint. (citations omitted) The causal connection can be broken by a sufficient showing that the confession was "an act of free will." (citations omitted)

500 Pa. at 581, 459 A.2d at 316.

The question then is whether the Commonwealth has shown that the subsequent statement was not the product of the exploitation of the original illegality. The Commonwealth's burden has been modified, or defined more narrowly, by the recent United States Supreme Court decision in *Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). In *Elstad,* the Court was faced with this same issue in a similar factual situation. There, the Supreme Court stated:

It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

*Id.* at ——, 105 S.Ct. at 1293:

[T]here is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda,* was voluntary. (footnote omitted) The relevant inquiry is whether, in fact, the second statement was voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements.

*Id.* at ——, 105 S.Ct. at 1298. The essence of the *Elstad* opinion is that unless the original illegal statement was not voluntarily made,

"a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible. The warning conveys the relevant information and thereafter the suspect's choice whether to exercise his unfettered priviledge to remain silent should ordinarily be viewed as an 'act of free will.' *Wong Sun v. United States, [supra ].*"

*Id.* at ——, 105 S.Ct. at 1294.

Based on the reasoning in *Oregon v. Elstad,* in this situation the Commonwealth is required to show that the initial inculpatory statement was not coerced and that the subsequent waiver was made knowingly and intelligently. The lower court implicitly found that the Commonwealth

had met this dual burden when it stated: "When the two statements were given the defendant had been neither threatened nor assaulted and was in complete control of his faculties. He gave intelligent answers to all questions and manifested no effects of any drugs or alcohol." These findings are supported by the record and appellant does not dispute them. Likewise, the lower court found that appellant had knowingly and voluntarily waived his constitutional rights under *Miranda.*

■ We turn now to appellant's claim that trial counsel was ineffective because of a potential conflict of interest. This claim is totally without merit. Trial counsel fully disclosed the situation to the appellant as well as to the trial court and the prosecuting attorney prior to participating in appellant's defense. Appellant raised no objection at the time and, even now, does not point to any specific harm he suffered as a result of the alleged conflict of interest. Therefore, he has failed to adequately raise an ineffectiveness claim. *See Commonwealth v. Wallace,* 495 Pa. 295, 433 A.2d 856 (1981). This case need not be remanded for an evidentiary hearing for appellant has failed to allege a claim which would be of arguable merit. *See Commonwealth v. Smith,* 321 Pa.Super. 170, 467 A.2d 1307 (1983).

Accordingly, the order of the court below is affirmed.