703 A.2d 441

COMMONWEALTH of Pennsylvania, Appellee,

v.

John HARRIS, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 27, 1997.

Decided Nov. 20, 1997.

Reargument Denied Jan. 28, 1998.

---

94

98

J. Michael Farrell, Philadelphia, for J. Harris.

Catherine Marshall, Alan Sacks, Philadelphia, for the Commonwealth.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

ZAPPALA, Justice.

This is a direct appeal pursuant to 42 Pa.C.S. §§ 722(4) and 9711(h) from the imposition of a sentence of death by the Philadelphia County Common Pleas Court. Appellant, John Harris, was convicted by a jury of first degree murder, robbery, criminal conspiracy, two counts of recklessly endangering another person and possessing an instrument of crime.[1] Following the penalty phase, the jury found that the aggravating circumstance that Appellant committed the killing while

---

1. This was Appellant's third trial on these charges. Two previous trials had resulted in hung juries.

in perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), out-weighed the mitigating circumstance of no significant history of prior convictions, 42 Pa.C.S. § 9711(e)(1).[2] For the reasons set forth herein, we affirm the judgment of sentence.

The record establishes that on August 3, 1992, Appellant and his codefendant, Ahmeen Mustafa,[3] entered R's Variety Store in Philadelphia. In addition to selling soda and candy, the store sold marijuana. Owen Edwards, the store owner, and employees Ronald Caison and Steven Parrish were about to exit the store when Appellant and Mustafa entered. Appellant immediately shot Edwards with a .357 revolver. Edwards collapsed and fell onto Parrish, pinning him against the wall. Caison fell to the floor and crawled away from the line of fire. Appellant then fired at Edwards five more times, killing him. Parrish was not injured. Appellant spit on Edwards and he and Mustafa stole money from his pockets. The two men then fled.

At the time of the murder, the victim was carrying a .380 handgun in his waistband. Officer Alan Jackson, a police firearms examiner, inspected the gun and testified that it had not been fired on the day of the killing because lint was present in its barrel.[4] Officer Jackson further concluded that

2. The Commonwealth argued that the evidence also supported the aggravating circumstance of causing a grave risk of death to another, 42 Pa.C.S. § 9711(d)(7). The defense presented evidence in support of the mitigating circumstances of any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8), and the age of the defendant, 42 Pa.C.S. § 9711(e)(4). Appellant was twenty years old at the time the crimes were committed. The jury did not find these circumstances.

3. Appellant and Mustafa were tried together. Mustafa was convicted of second degree murder, criminal conspiracy and robbery and was sentenced to life imprisonment. On June 27, 1996, the Superior Court affirmed the judgment of sentence at No. 993 Philadelphia, 1995. No further review was sought.

4. On cross-examination by defense counsel for Mustafa, Officer Jackson testified that he examined the gun two weeks after the incident. He discovered gunpowder residue and lint in the barrel which indicated that the gun had been fired at some prior time but had not been cleaned. When questioned on redirect, Officer Jackson stated that had the gun been fired on the day of the incident, lint would not have

the bullet specimens found at the murder scene were most likely fired from a .357 handgun.

Caison, who knew Appellant by his first name, identified him at trial as the shooter. Appellant did not testify at trial. His only defense was a stipulation that four persons would testify to his reputation as a law-abiding citizen.

Appellant first contends that the evidence was insufficient to support his conviction for first degree murder. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to support all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Brown,* 544 Pa. 406, 676 A.2d 1178 (1996). To prove murder in the first degree, the Commonwealth must establish that a human being was unlawfully killed, that the accused committed the killing and that the killing was done in an intentional, deliberate and premeditated manner. 18 Pa.C.S. § 2502(a); *Commonwealth v. Mitchell,* 528 Pa. 546, 599 A.2d 624 (1991).

Specifically, Appellant contends that the Commonwealth failed to present evidence of premeditation and deliberation. Without any citation to the record, Appellant asserts that the evidence established that the shooting might have occurred due to the victim's initial attack against Appellant. As the only evidence presented on behalf of Appellant at trial was a stipulation of character testimony, his new found theory of self defense is meritless. Furthermore, viewing the evidence in the light most favorable to the Commonwealth, eyewitness testimony established that Appellant entered the store and shot the victim six times at close range during the course of a robbery. This evidence is sufficient to support a conviction of murder in the first degree.

Appellant's next three issues concern voir dire. He first contends that the trial court violated his right to a public

accumulated in the gun's barrel by the time he examined the weapon two weeks later.

trial guaranteed by the Pennsylvania Constitution and by the First, Sixth, and Fourteenth Amendments to the United States Constitution.[5] To better utilize time and space available at city hall, the trial court completed collective voir dire in the courtroom and then questioned each prospective juror individually in the anteroom, outside the hearing of the venire panel. The court noted that the alternative procedure would have been to place the panel in a room far removed from the courtroom and then have each juror separately brought in to be questioned.

In determining whether this procedure violated Appellant's right to a public trial, we keep in mind that such right serves two general purposes: (1) to prevent an accused from being subject to a star chamber proceeding; and (2) to assure the public that standards of fairness are being observed. *Commonwealth v. Berrigan*, 509 Pa. 118, 501 A.2d 226 (1985). Confidence in our system of jurisprudence is enhanced by the openness of judicial proceedings. *Id.* at 129, 501 A.2d at 232. Although the right to a public trial is applicable to voir dire proceedings, *Press–Enterprise Company v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78.L.Ed.2d 629 (1984), a trial judge may, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial. *Id.*

The flaw in Appellant's argument is that he has not asserted that any member of the public was denied access to the questioning that occurred in the anteroom. No exclusionary order was entered and the record does not establish that the court prohibited the public from observing the individualized voir dire. Defense counsel did not object or request that the individualized voir dire take place in the courtroom. The

5. Appellant's counsel did not object on the grounds that his right to a public trial was violated when the individualized voir dire was conducted in the anteroom. Counsel's only objection was that the trial judge solely conducted the questioning of the prospective jurors. Applying the relaxed waiver standard for capital cases, *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), however, we shall address this claim on its merits.

procedure was employed merely as a way to efficiently utilize judicial resources. A court reporter was present and the transcript of the proceedings is of public record.

As there is no evidence that the public was excluded, Appellant's right to a public trial was not violated. See *Commonwealth v. Johnson*, 347 Pa.Super. 93, 500 A.2d 173 (1985) (practice of conducting voir dire in separate room in advance of taking testimony in the courtroom does not violate defendant's right to a public trial). Compare *Commonwealth v. Johnson*, 309 Pa.Super. 367, 455 A.2d 654 (1982) (court's *exclusion of public* from courtroom during jury selection violates defendant's right to a public trial).[6]

■ Appellant also argues that the trial court deprived him of his right to a fair and impartial jury by automatically excluding jurors merely because of their answers to specific questions on the juror questionnaire.[7] The questions included whether moral, religious or conscientious scruples would prevent the venireman from imposing a death sentence in a proper case; whether moral, religious or conscientious scruples would prevent the venireman from imposing a sentence of life imprisonment in a proper case; whether the venireman would always vote for the death penalty; and whether the venireman would always vote for a life sentence. The court informed the parties that at the end of collective voir dire, it would determine which prospective jurors responded in the affirmative to these questions and would not individually voir dire those persons unless the parties did not select a jury from the remaining veniremen. By agreement of all counsel, the veniremen responding in the affirmative were dismissed.

Appellant argues that the trial court's procedure excluded prospective jurors who might have indicated through further

6. In a related claim, Appellant contends that counsel was ineffective for failing to object to this procedure of individualized voir dire. As we have rejected the underlying claim, counsel cannot be deemed ineffective for failing to raise it. *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989).

7. This claim was also not preserved in the trial court but shall be addressed on its merits.

questioning that they could impose the death penalty in a proper case. Relying on *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), Appellant asserts that "the jury that adjudicated guilt and sentenced [him] to death 'fell woefully short of that impartiality to which [he] was entitled.'" Appellant's Brief at 38. The *Witherspoon* standard, as described by our Court in *Commonwealth v. Jasper,* 531 Pa. 1, 8, 610 A.2d 949, 953 (1992), provides that venirepersons who are unable to perform their duties impartially and faithfully at the sentencing stage of the trial may be excused for cause.[8]

This rule was not violated since the dismissed jurors indicated that they had personal views that prevented them from imposing a sentence of death or life imprisonment when the law and facts required the same. As a trial judge has wide latitude in supervising the manner in which voir dire is conducted, including the power to prevent further voir dire when responses to death qualification questions prove that additional inquiry will be fruitless, *Id.* at 9, 610 A.2d at 953, the trial court did not err by dismissing the jurors. Furthermore, Appellant makes no specific claim as to how the jury was biased or partial.

■ In his final voir dire claim, Appellant contends that the trial court precluded effective use of his peremptory challenges by requiring him to state his reasons for striking a white venireman.[9] This claim is meritless. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),

---

**8.** In *Jasper,* we noted that the initial doctrine set forth in *Witherspoon* was that jurors cannot be challenged for cause based on their *general* opposition to the death penalty; it must be made unmistakably clear that they would be unable to set aside their personal beliefs in deference to the law as required by their oath as jurors. We found, however, that the United States Supreme Court refined the *Witherspoon* standard in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The test set forth in *Adams* was whether the juror's view on capital punishment would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *Id.* at 45, 100 S.Ct. at 2526.

**9.** Once again, this claim is being addressed on the merits pursuant to the relaxed waiver rule since no objection was made at trial.

the United States Supreme Court held that the Equal Protection Clause prohibits a prosecutor from exercising peremptory challenges to exclude jurors solely on account of their race. This holding was expanded in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), to apply to the intentional discriminatory use of peremptory challenges by a criminal defendant. The Court held that if the state demonstrates a prima facie case of racial discrimination by a defendant, the defendant must articulate a racially neutral explanation for the exercise of a peremptory challenge.

Here, the trial court stated that it requested an explanation for defense counsel's use of a peremptory challenge against a white venireman because every venireman previously struck by the defense had been a white male. Appellant's counsel provided a racially neutral explanation and the court permitted the peremptory challenge. Thus, Appellant's effective use of his peremptory challenges was not precluded.

Appellant next contends that he was deprived of a fair trial and impartial jury because the trial court limited his cross-examination and repeatedly criticized his counsel in the presence of the jury. Several of Appellant's citations to the record refer to discussions that took place at sidebar. As these conversations could not possibly affect the jury's perception of Appellant or his counsel, no further analysis of these claims is necessary.

■ Regarding the comments made by the trial court in the presence of the jury, we have extensively reviewed the record and find no error. The court merely cautioned counsel not to editorialize,[10] warned counsel not to mislead the jury[11] and

---

10. On one occasion the trial court stated "please don't editorialize, just ask the question." (N.T. 12/1/93, 59).

11. The trial court stated the following after Appellant's counsel mischaracterized the contents of Officer Jackson's report.

Excuse me, that's not what Officer Jackson said. You're misleading the jury by stating it that way. If you want to bring out that you've read to the jury what it says there, it's up to the jury to decide, Ms. Deni, whether they accept Officer Jackson's explanation or they don't, but don't distort what he says.

clarified the testimony of a witness upon the request of co-defendant's counsel.[12] These comments in no way prejudiced Appellant so as to prevent him from receiving a fair trial.

Also, the trial court did not limit Appellant's cross-examination. Instead, because the court was concerned that the jury was not being attentive due to the "painfully slow manner" of Appellant's counsel's questioning, it suggested *at sidebar* that co-defendant's counsel conduct his cross-examination and that Appellant's counsel review her notes. (N.T. 12/1/93, 182–4). The court permitted Appellant's counsel to resume her cross-examination and did not limit her in any way.

Appellant also contends that Officer Jackson offered opinions in addition and contrary to those opinions offered in his written report. He argues that the Commonwealth violated Pennsylvania Rule of Criminal Procedure 305 [13] by failing to disclose this information to the defense prior to trial.

The challenged testimony concerns the six bullet specimens found at the murder scene, bullet specimens B1 and B2, bullet jackets BJ1 and BJ2, and bullet cores BC1 and BC2. In a firearms report prepared by Officer Edward Jachimowitz, it

(N.T. 11/30/94, 237–8). Appellant's counsel responded that she was reading from the report. The prosecutor objected to the mischaracterization and the court sustained the objection stating

The jury will recall Officer Jackson's testimony. Of course it is up to you, jurors, to decide whether, in fact, you accept Officer Jackson's explanation or whether you want to accept what [Appellant's counsel] will later obviously argue to you as what this means.

*Id.*

12. During the cross-examination of Officer Jackson, co-defendant's counsel noted his confusion regarding which firearm Jackson was referring to. In response, the trial court summarized Jackson's testimony and Jackson reassured the court that its recollection was correct.

Also during the cross-examination of Jackson, Appellant's counsel referred to the bullets contained in the ballistics report by numbers listed in the report and the property receipt number. The trial court suggested to Appellant's counsel that it would be easier for the jury to understand if she referred to the bullets by the place where the bullet fragments were recovered.

13. Pa.R.Cr.P. 305(B)(1)(e) requires that the Commonwealth disclose to the defendant's attorney any expert opinions within the possession or control of the attorney for the Commonwealth.

was noted that B1, B2, BJ1, and BJ2 were not fired from the victim's .380 handgun. The report further indicated that BC1 and BC2 were "unsuitable for comparison purposes." At a prior trial, Officer Jackson testified in accordance with this report. In this trial, however, Officer Jackson testified on cross-examination that he had since reexamined BC1 and was of the opinion that it also had not been fired from the victim's weapon (N.T. 11–30–93, 245).[14]

Appellant fails to establish a discovery violation because the challenged testimony was not presented by the Commonwealth. Instead, the statement was made during cross-examination. The Commonwealth did not ask Officer Jackson if he had changed his opinion regarding BC1 or BC2. Thus the record does not establish that the evidence was in the "possession and control of the attorney for the Commonwealth" pursuant to Pa.R.Cr.P. 305(B)(1)(e).

Moreover, Appellant fails to demonstrate how he was prejudiced by this testimony. The implicit argument is that if all the bullet fragments found at the scene were not fired from the same gun, some bullets could have been fired from the victim's weapon, thus supporting a theory of self-defense. As previously noted, however, Appellant did not adopt such theory or present any evidence that he acted in a manner to protect himself from the victim's threat of death or serious bodily injury.[15]

 Appellant next contends that the trial court erred in allowing Commonwealth witness Ronald Caison to give an expert opinion that the murder weapon was a .357 magnum, without a foundation being laid as to his training, education or experience. He argues that Caison's testimony was inadmissible because two Commonwealth experts testified that one

14. Contrary to Appellant's assertion, Officer Jackson only testified that upon further examination BC1 was not fired from the victim's gun. Officer Jackson did not mention BC2.

15. Appellant also challenges counsel's stewardship for failing to object to the testimony of Officer Jackson because it was outside the scope of and inconsistent with the written expert report. As we have already rejected Appellant's underlying claim, counsel cannot be deemed ineffective.

could not discern a difference between a .38 special and a .357 revolver without knowing the manufacturer of the weapon.

Appellant's contention goes to the weight rather than the admissibility of the evidence. Admissibility of expert testimony is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Commonwealth v. Petrovich*, 538 Pa. 369, 648 A.2d 771 (1994). The standard for a qualification of an expert is liberal. If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given his evidence is for the jury to determine. *Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305 (1996).

Here, Caison testified that he was familiar with a .357 revolver because one had previously been kept in the store and that he recognized the murder weapon as a .357 revolver. (N.T. 12/1/93, 108, 113). His testimony was therefore properly admitted. Moreover, as the murder weapon was never recovered, evidence that the perpetrator used a .357 revolver did not connect Appellant to the crime and was therefore not prejudicial.

Appellant next challenges the effectiveness of counsel on several grounds. The standard of review for ineffective assistance of counsel is well-established. Counsel is presumed effective and the burden of proving ineffectiveness rests with the defendant. *Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293 (1996). In order for Appellant to prevail on a claim of ineffectiveness of counsel he must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

We shall first address Appellant's contention that counsel was ineffective for failing to present the defense of self-defense. Appellant baldly asserts that he advised his

counsel that he shot the victim only after the victim fired his gun.[16] He further contends that a .380 semi-automatic weapon was found on the premises, that there were bullet fragments found at the scene which were unsuitable for comparison and arguably could have been fired from the .380 handgun, and that the eyewitness for the Commonwealth admitted to removing a firearm from the victim's waistband.

In order to establish self-defense it must be shown that: (a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; (b) the actor reasonably believed that he was in imminent danger of death or serious bodily injury and that there was a necessity to use such force in order to save himself or others; and (c) the actor did not violate any duty to retreat or to avoid the danger. *Commonwealth v. Harris*, 542 Pa. 134, 137, 665 A.2d 1172 (1995).

There is absolutely no evidence that the incident was provoked by the victim. Instead, the evidence demonstrates that Appellant entered the store and immediately shot the store owner. More significantly, Appellant could not have reasonably believed that it was necessary to use the amount of force he employed. Assuming arguendo that the victim did fire his weapon at Appellant, which assumption is wholly unsupported by the record, Appellant's use of force exceeded that which would have been necessary to save his life. Appellant fired one shot, which disabled the victim and caused him to fall onto another store employee. At that point, no further force would have been necessary and Appellant would have had the duty to retreat. Appellant, however, shot the victim five more times, killing him. Such use of excessive force could not support a defense of self-defense. See *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575 (1991) (when one of two shots paralyzed victim, third shot to victim's face was unnecessary and constituted excessive force). Thus, as this claim lacks

16. The Commonwealth notes that the Appellant fails to offer any explanation why he failed to notify his counsel of this defense in his prior two trials.

arguable merit, counsel was not ineffective for failing to present it.

Appellant next challenges counsel's stewardship with regard to his failure to request funds to hire a defense ballistics expert. He asserts that the testimony of the Commonwealth's expert, Officer Jackson, was equivocal and that an independently retained expert may have assisted the defense in the presentation of a contrary opinion or aided in the cross-examination of Officer Jackson. As this claim is based on sheer speculation, we cannot grant Appellant relief. Appellant's counsel extensively cross-examined Officer Jackson at trial and now Appellant fails to indicate how the absence of an independent expert prejudiced him.

Appellant also claims counsel was ineffective for failing to request funds to hire an expert to examine the fingerprints on the .380 firearm and those of the victim and the eyewitness. This claim also fails as such evidence is irrelevant. Eyewitness Ronald Caison testified that he removed the gun from the victim's waistband and placed it in the back of the store. He also testified that the gun was sometimes present in the store for the employees' safety. Thus, fingerprints of Caison or the victim on the weapon would not have established that either individual fired the weapon on the day of the incident.

Appellant next challenges counsel's representation on the grounds that she failed to move to suppress evidence, failed to move to dismiss the charges against him, and failed to request an instruction providing that the jury could infer that the evidence not presented would have been favorable to him. These claims are virtually incomprehensible. Appellant essentially argues that the police failed to adequately investigate the crime scene to recover evidence supportive of his defense. These claims are pure speculation and do not warrant further discussion.

Appellant's last challenge to counsel's stewardship concerns her failure to argue "the mitigating factor of residual or unreasonable doubt" where there was evidence of self-

defense and two prior hung juries. Appellant's Brief at 67.[17] We have already rejected Appellant's repeated claims of self-defense. The fact that two prior juries were deadlocked has no relevance to the imposition of the penalty in this case.[18] As this evidence was either irrelevant or inadmissible, counsel cannot be deemed ineffective for failing to present it.

Appellant's final three claims allege trial court errors during the penalty hearing. He first contends that the trial court erroneously instructed the jury that it would be improper for them to consider sympathy or mercy when deciding the sentence. Before the penalty phase began, the trial court informed counsel that it intended to charge the jury in accordance with *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1 (1992), *cert. denied*, 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 789 (1993). Specifically, the trial court stated that it would read the following to the jurors:

> Finally, jurors, I want to tell you in making a decision whether or not to impose the death penalty upon the defendant, it is entirely proper for you to consider sympathy or mercy as a reason to impose the sentence of life imprisonment. The sympathy or mercy which you may wish to throw upon John Harris must be upon evidence, any one or more of you find to be a mitigating circumstance.

(N.T. 12/6/93, Volume I, 11–12).

The trial court indicated in its opinion that it later instructed the jury by reading from a prepared printed instruction. The transcript, however, reflected that the instruction read "it is entirely *improper* for you to consider sympathy or mercy as

**17.** Appellant defines "residual doubt evidence" as evidence which has a tendency to show that some doubt may remain which is insufficient to justify an acquittal, but is sufficient to constitute mitigation evidence at sentencing. Appellant's Brief at 69.

**18.** We recognize that the defendant may introduce "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense," 42 Pa.C.S. § 9711(e)(8). However, our Court has never held that evidence of a prior hung jury is evidence of mitigation. It merely signifies that a unanimous jury in a prior case was not convinced beyond a reasonable doubt that the Commonwealth presented sufficient evidence to support the charges against Appellant.

a reason to *impede* a sentence of life imprisonment." (Emphasis added) (N.T. 12/6/93, Volume II, 86).

Upon discovering the error, the Commonwealth filed a petition to correct the record pursuant to Pa.R.A.P.1926.[19] The trial court subsequently entered an order correcting the transcript to conform to the charge given. Appellant argues that the court improperly corrected the record and that, considering the severity of the punishment imposed, the record should be read as originally transcribed. He further submits that without tape recorded evidence that the instruction was properly given, the transcript should not be disturbed.

This claim is unpersuasive because Pa.R.A.P.1926 does not require "tape recorded evidence" to amend a trial transcript. It was within the province of the trial court to correct known errors. Moreover, the record amply supports the court's intention to give the proper charge. No objections were made to the charge given at trial and the original transcription is nonsensical.

Appellant next argues that the Commonwealth improperly introduced passion, prejudice and sympathy into the penalty hearing by presenting evidence of statements he made to the victim's widow as he left the courtroom.

In support of the mitigating circumstance of "any other evidence of mitigation concerning the character and record of the defendant," Appellant's counsel presented the testimony of Dr. Anthony Mustillo, a clinical psychologist. Dr. Mustillo stated that Appellant's family was very cohesive, that Appellant was withdrawn and shy, that he had no indication of a sociopathic personality and that there was a very strong chance of his rehabilitation. Appellant's mother and grandmother also testified that Appellant helped care for his termi-

19. Rule 1926 provides that differences arising as to whether the record truly discloses what occurred in the lower court shall be settled by the lower court. If further states that if anything in the transcript is misstated, the lower court may direct that the misstatement be corrected and if necessary that a supplemental record be certified and transmitted.

nally ill grandfather, that he was a nice person who had a soul and a heart, and that he was sweet and kind.[20]

To rebut this evidence, the Commonwealth presented the testimony of Mrs. Owen Edwards, the victim's widow, and an intern from an organization known as Family of Murder Victims, who accompanied Mrs. Edwards to trial. Both women testified that as Appellant was being escorted from the courtroom after the verdict was announced, he stated to Mrs. Edwards, "I'm living, but I'll be back." The jury was also informed of the stipulation that a sheriff would testify that he heard Appellant say to Mrs. Edwards, "I was tried by twelve. He was carried out by six."

Appellant argues that the introduction of these statements injected passion and prejudice into the proceedings. Relying upon *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), Appellant contends that evidence of his lack of remorse was improperly admitted because he did not present evidence of remorse as a mitigating circumstance.[21] In *Travaglia,* the defendant argued that the prosecutor exceeded bounds of proper argument when he commented on the defendant's failure to show remorse while he was testifying. We held that the single reference to the defendant's lack of remorse was not improper. We went on to state that "had the prosecutor launched an extended tirade on this point, thereby focusing undue attention on the remorse factor, [the defendant's] claim of prejudice might have greater force." *Id.* at 499–500, 467 A.2d at 301.

Here, the record indicates that the Commonwealth did not offer the statements to establish lack of remorse, but rather to rebut Appellant's character evidence that he was a sweet and nice person and also to rebut the psychologist's opinion that Appellant would be amenable to rehabilitation. The prosecu-

20. Stipulations were also read to the jury regarding Appellant's age at the time of the murder and his lack of a significant history of felony convictions.

21. Appellant also relies on *Moore v. Kemp,* 809 F.2d 702 (11th Cir. 1987). We have examined this opinion and find that it lends no support to Appellant's argument.

tor referred to the statements only once in her closing argument and did not "launch a tirade on this point." As the Commonwealth is not limited to introducing evidence of aggravating circumstances but can also rebut evidence of mitigating circumstances, *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990), *reh'g denied,* 498 U.S. 993, 111 S.Ct. 541, 112 L.Ed.2d 551 (1990), we find no error in the admission of defendant's statements.[22] See *Id.* (defendant's statements that he believed that "political power grows out of the barrel of a gun," were relevant and admissible in capital sentencing hearing in view of defense character evidence that defendant was a "peaceful, genial" man).

Appellant further argues that the Commonwealth improperly informed the jury of the number of friends and relatives of the victim who were present in the courtroom. This claim warrants no discussion as such reference is not prejudicial to Appellant.

Appellant's last claim challenges our Court's proportionality review. He contends that the data base maintained by the Administrative Office of Pennsylvania Courts (AOPC) is substantially flawed and the procedures which produce the results are inherently defective.[23] We also rejected a similar claim in *Commonwealth v.* Gribble, 550 Pa. 62, 703 A.2d 426 (1997), wherein we stated:

When we conduct our [proportionality] review, we examine not only the compiled data from the AOPC, but we also have at our disposal the verdict sheets and the review forms submitted by the President Judges. This allows us to conduct a thorough review of cases similar to the one in question and provides additional screening for any anomalies that may be present in the AOPC database. We have

22. Appellant also contends counsel was ineffective for failing to object to the Commonwealth's introduction of these statements. As we find that the statements were properly admitted, counsel cannot be deemed ineffective for failing to object.

23. He relies on a statistical analysis submitted by a professor from Temple University. We have examined the professor's report and do not find that his conclusions are accurate.

carefully reviewed these procedures and find nothing arbitrary or capricious in this scheme. Instead, we believe that our proportionality review comports with the General Assembly's desire to afford capital defendants an additional check against the arbitrary imposition of the death penalty. At ——, 703 A.2d at 441.

 We have conducted such a review in this case and conclude that the sentence of death was not disproportionate to the penalty imposed in similar cases.[24]

We must affirm a sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3).

 We do not find that the sentence of death was the product of passion, prejudice or any other arbitrary factor. We further conclude that there was sufficient evidence to support the sole aggravating circumstance found, that Appellant committed the killing while in perpetration of a felony. Eyewitness testimony established that Appellant shot the victim and then stole money from his pockets.

Accordingly, we affirm the judgment of sentence.[25]

24. Effective June 25, 1997, the General Assembly removed proportionality review from the death penalty statute by deleting all of subsection (h)(3)(iii) and part of subsection (h)(4) that references proportionality review. However, because Appellant's sentence of death was imposed before the effective date of the act, he is statutorily entitled to proportionality review. See *Gribble*, supra.

25. The Prothonotary is directed to transmit to the Governor a full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court. 42 Pa.C.S. § 9711(i).