COMMONWEALTH of Pennsylvania, Appellant,

v.

Erik Thomas PITTS, aka Erik Laurese Moore, Appellee.

Superior Court of Pennsylvania.

Argued April 8, 1999.
Filed Sept. 27, 1999.

---

Mary M. Killinger, Executive Asst. Dist. Atty., Norristown, for Com., appellant.

Garrett D. Page, Norristown, for appellee.

Before HUDOCK, EAKIN and MUSMANNO, JJ.

HUDOCK, J.:

¶ 1 In this appeal the Commonwealth asserts the trial court erred in granting Appellee's motion to suppress his verbal statements given to the police and in denying the Commonwealth's motion *in limine* seeking to preclude Appellee from offering psychiatric evidence to support a claim of self-defense to a charge of attempted murder and related charges.[1] We affirm.

■ ¶ 2 The standard of review employed by an appellate court when reviewing the grant of a suppression motion has been summarized by our Supreme Court:

We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). *See Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. *Commonwealth v. Monarch*, 510 Pa. 138, 147, 507 A.2d 74, 78 (1986). If so, we are bound by those findings. *Commonwealth v. James*, 506 Pa. 526, 533, 486 A.2d 376, 379 (1985). Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. James*, 506 Pa. at 532–33, 486 A.2d at 379; *Commonwealth v. Hamlin*, 503 Pa. 210, 216, 469 A.2d 137, 139 (1983).

*Commonwealth v. DeWitt*, 530 Pa. 299, 301–02, 608 A.2d 1030, 1031 (1992) (footnote omitted). Moreover, if the evidence when so viewed supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusion drawn from those findings. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 513 A.2d 1041, 1042 (1986).

¶ 3 Two detectives and Appellee testified at the suppression hearing about the circumstances surrounding Appellee's statements given at the police station. Based upon their testimony, the suppression court summarized the evidence as follows:

After investigating a shooting incident that occurred in Lynnewood Gardens along Penrose Avenue, on December 9, 1997, detectives from the Cheltenham Police Department and the Montgomery County District Attorney's Office secured an arrest warrant for the Appellee, Erik Pitts. On December 15, 1997, [Appellee] was directed by the police to come to the police station. [Appellee] testified:

I had been contacted by Detective Santarelli, and we talked on the phone, and he said he had some questions for me in reference to a shooting on December 9th ... He said it would be appreciated if I could come into the police office and give a statement ... And he said, it has to be today ... And he said, basically, if you don't come in we're going to have to send somebody out to get you.

N.T. 10/6/98, p. 60–61. Upon his arrival, the police did not advise [Appellee] of their intentions to arrest him. When the detectives were available, [Appellee] was taken into a room to talk with them.

In one breath, [Appellee] told the detectives, "that he had not even been present at the apartment complex that

---

1. Along with its notice of appeal, the Commonwealth has certified in good faith that the court's order granting suppression of the evidence will substantially handicap its prosecution of the case. *See Commonwealth v. Dugger*, 506 Pa. 537, 546–47, 486 A.2d 382, 386 (1985); *see also* Pa.R.A.P. 311(d), 904(e).

.. 

night, and, further, that he had contacted an attorney and that the attorney advised him not to write anything or sign anything." N.T. 10/6/98, p. 9. The detectives did not advise [Appellee] of his constitutional rights, and he did not waive them. As soon as [Appellee] exercised his right to counsel and his right to remain silent, he was formally placed under arrest.

Trial Court Opinion, 11/20/98, at 1–2.

■ ¶4 Although the suppression court summarized the testimony taken at the suppression hearing, it did not make specific findings of fact and conclusions of law as required by Pa.R.Crim.P. 323(i). As this Court has noted, however:

Both this [C]ourt and our Supreme Court have expressly disapproved of this practice and have, when necessary, vacated judgment of sentence and remanded for a new suppression hearing. *See, e.g., Commonwealth v. Jackson,* 483 Pa. 101, 394 A.2d 930 (1978); *Commonwealth v. Spaulding,* 275 Pa.Super. 261, 418 A.2d 712 (1980); *Commonwealth v. DeSantis,* 337 Pa.Super. 70, 486 A.2d 484 (1984). Where possible, however, we have looked to the trial court's resolution of post-trial motions, as well as the record, in order to determine the propriety of suppression orders in these situations. *See, e.g., Commonwealth v. Guinther,* 290 Pa.Super. 441, 434 A.2d 834 (1981); *Commonwealth v. Haynes,* 395 Pa.Super. 322, 577 A.2d 564 (1990).

*Commonwealth v. Gelber,* 406 Pa.Super. 382, 594 A.2d 672, 678 (1991). In the present case, the suppression court was presented with credibility questions and as this is an interlocutory appeal by the Commonwealth, there are no post-trial motions to consider. However, because the suppression court has provided the basis for its suppression ruling, which discusses certain facts, we may assume the court found those to have been established by the evidence, and we need not remand the case.

¶5 The court below suppressed Appellee's statements after concluding that they were the result of custodial interrogation by the police where they failed to apprise him of his *Miranda* [2] rights. In determining that the statements should be suppressed, the court reasoned as follows:

In the instant case, we found that the oral statement made by the Appellee on December 15, 1997, indicating he had not been present during the Penrose Avenue incident, was the result of police conduct intended to elicit statements. At the time, the detectives had an arrest warrant for the Appellee. Yet, rather than go to the Appellee and place him under arrest, they demanded that the Appellee come in that day and talk about the Penrose Avenue incident. When the Appellee went to the police station, he was not advised of his constitutional rights nor did he waive them. At no time did the detectives communicate to the Appellee that he was free to leave. However, the detectives' words and actions were calculated to have the Appellee make incriminating statements that could be used against him.

During the pre-trial hearing, the evidence presented by the Commonwealth was self-contradicting. Detective Richard L. Peffall testified that he never warned the Appellee of his *Miranda* rights. N.T. 10/6/98, p. 9. Yet, Detective John M. Santarelli testified that, "Detective Peffall read to [Appellee] his rights." N.T. 10/6/98, p. 43. Furthermore, there were conflicting accounts given, at the pre-trial hearing, as to the actual language and order of the words spoken by the Appellee during his oral statement.

Detective Peffall also testified that, if the Appellee had attempted to leave during their encounter on December 15, 1997, he would have been immediately arrested. N.T. 10/6/98, p. 29. The Appellee testified that he did not believe he was free to leave during the encounter.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

N.T. 10/6/98, p. 65. As a result, we found that during this encounter, the Appellee was in custody and being interrogated. We also found that the Appellee had not been advised of his rights nor had he waived his rights. In fact, when the Appellee asserted his right to counsel and exercised his right to remain silent, he was then formally placed under arrest. Therefore, the Appellee's oral statement to the police was suppressed.

Trial Court Opinion, 11/20/98, at 8–9.

■■■ ¶ 6 "*Miranda* warnings are necessary only on those occasions when a suspect is undergoing actual 'custodial interrogation.'" *Commonwealth v. Fento*, 363 Pa.Super. 488, 526 A.2d 784, 786 (1987). The test for determining whether a suspect is being subjected to custodial interrogation is whether he or she "is physically denied of his [or her] freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Gibson*, 553 Pa. 648, 662–64, 720 A.2d 473, 480 (1998). "The standard for determining whether police have initiated a custodial interrogation or an arrest is an objective one, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the troopers or the person being seized." *Commonwealth v. Edmiston*, 535 Pa. 210, 223–27, 634 A.2d 1078, 1085–86 (1993). "Whether an encounter is deemed 'custodial' must be determined with reference to the totality of the circumstances." *Id.* at 1086.

■■■ ¶ 7 In the present case, prior to Appellee talking with the detectives at the police station, Appellee had arrived at the station to find the detectives who had contacted him unavailable. After waiting approximately twenty-five minutes, Appellee left his name with the desk sergeant and left the police station. After their return to the station, the detectives, again, contacted Appellee and told him to come to the station; Appellee complied with the request. Thus, the Commonwealth asserts that it is inconceivable that a reasonable person, who has been permitted to leave the police department earlier in the day, would assume he was under arrest when he drove himself back to the police station later in the same day. The Commonwealth further argues that the court improperly focused on the fact that the detectives readily admitted that they had secured an arrest warrant for Appellee earlier in the day and would not have permitted him to leave the department after he arrived. The Commonwealth contends that because there is no evidence of record that the detectives communicated their intention to Appellee, there was no reasonable basis from which Appellee could have believed that his freedom of action was restricted. Thus, the Commonwealth concludes that Appellee's statement was not the result of a custodial interrogation and, as such, the statement should not have been suppressed. We disagree.

■■■ ¶ 8 Although Appellee voluntarily went to the police department, the detectives informed him that if he did not come to the station they would send an officer to retrieve him. The room Appellee and the two detectives entered was a small room with a table and chairs. During the interview both doors to the room were closed. One detective was seated across the table from Appellee and the other detective remained standing. Appellee was never told that he was free to leave at any time or that he was not required to answer any questions. In fact, Appellee was not free to leave the premises and as soon as Appellee refrained from answering the detectives' questions, he was arrested. Moreover, Appellee was more than the focus of the investigation. The detectives had secured an arrest warrant for Appellee prior to calling him to the station for questioning. Irrespective of the answers given by Appellee to the inquiries posed by the detectives, Appellee was not going to be

permitted to leave and was to be arrested. Police detentions become custodial when they constitute the functional equivalent of a formal arrest. *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323, 1332 (1988). Clearly, Appellee was in custody so as to trigger his right to *Miranda* warnings. *See Commonwealth v. Fox*, 697 A.2d 995 (Pa.Super.1997), *appeal denied*, 550 Pa. 717, 706 A.2d 1211 (1997) (holding that defendant was subject to custodial interrogation when interviewed by a state trooper at police barracks, even if defendant may have believed he was brought to the barracks to repair a police cruiser, as it was clear from troopers' testimony that defendant was not free to leave the barracks and he was going to be arrested); *Commonwealth v. Craig*, 345 Pa.Super. 542, 498 A.2d 957 (1985) (holding that defendant, who had been picked up at his place of work by police officer and transported to police headquarters, had been met by two detectives, taken into an interrogation room with the door closed after him, and had been told that he was suspected of being involved in a recent murder, was subject to custodial interrogation or its functional equivalent and was thus entitled to *Miranda* safeguards at time he entered interrogation room with the two detectives). Accordingly, the suppression court, in this instance, properly suppressed Appellee's statement.

¶ 9 The Commonwealth next challenges the trial court's denial of its motion *in limine* that sought to preclude Appellee from presenting psychological evidence of post-traumatic stress syndrome to support a claim of self-defense. Appellee, in turn, challenges the right of the Commonwealth to appeal from the adverse evidentiary ruling on its motion alleging that the appeal is premature, as the proffered testimony would not substantially handicap or terminate the Commonwealth's case.

■■■ ¶ 10 Initially, we note that the Commonwealth has been granted permission to appeal adverse rulings on pre-trial suppression motions, upon certification

that the ruling substantially handicaps or terminates the prosecution, effectively putting the Commonwealth out of Court. *Dugger*, 506 Pa. at 545–46, 486 A.2d at 386. The Commonwealth's good faith certification, in and of itself, provides an absolute right to appeal. *Id.* at 547–48, 486 A.2d at 387. The Supreme Court has expanded this rule to include appeals from the grant of motions *in limine* which exclude evidence that has the effect of terminating or substantially handicapping the prosecution. *See Commonwealth v. Matis*, 551 Pa. 220, 230–31, 710 A.2d 12, 17 (1998); *Commonwealth v. Deans*, 530 Pa. 514, 515–17, 610 A.2d 32, 33 (1992). Moreover, this Court has recently, in a case procedurally similar to the instant case, recognized that when the Commonwealth appeals an interlocutory order that allows evidence proffered by the defense, the good faith certification, without more, is sufficient to mandate review by this Court. *Commonwealth v. Allburn*, 721 A.2d 363, 365 (Pa.Super.1998), *appeal denied*, —— Pa. ——, 739 A.2d 163, 1999 Pa. Lexis 1447 (Pa. May 25, 1999). Thus, the *Allburn* decision is dispositive of Appellee's contention that the Commonwealth's appeal in this regard is premature as it does not substantially handicap or terminate the Commonwealth's case. Because this appeal is properly before our Court, we now turn to the merit of the issue presented.

■■■ ¶ 11 Specifically, the Commonwealth seeks to preclude Appellee from presenting psychiatric testimony as evidence of Appellee's state of mind as it relates to a theory of self-defense. Appellee filed reports with the police, which state that he was robbed at gunpoint, by unknown individuals, on two occasions prior to the incident at issue. He contends that as a result of those robberies, he has developed post-traumatic stress syndrome. Appellee sought to introduce at trial copies of the complaints he made to the police and psychiatric testimony from Stephen Mechanick, M.D. The theory of self-defense posited by Appellee is that he experienced such trauma by the earlier incidents

that when the car driven by the victim approached him, the driver began to shout profanities at him and he then saw a silver flash, Appellee reasonably believed that the victim had reached for a gun and that he was in danger of death or serious injury. Appellee alleges that he then fired a warning shot at the victim, which accidentally entered through the car's windshield, striking the victim's hand. Thus, Appellee argues that the testimony of Dr. Mechanick was relevant as it would have explained to the jury how post-traumatic stress syndrome impacted upon the reasonableness of his belief that at the time he shot the victim, he was in danger of death or serious bodily injury. Conversely, the Commonwealth argues that the defense asserted is not recognized in Pennsylvania and, thus, should not be permitted at trial.

¶ 12 A defendant has a fundamental right to present evidence provided the evidence is relevant and not subject to exclusion under any established evidentiary rule. *Commonwealth v. McGowan*, 535 Pa. 292, 294–95, 635 A.2d 113, 115 (1993). Evidence is not relevant unless the inference sought to be raised by it bears upon a matter at issue and renders the desired inference more probable than it would without the evidence. *Commonwealth v. Vallejo*, 532 Pa. 558, 561, 616 A.2d 974, 976 (1992). In determining whether evidence is admissible at trial, the trial court ordinarily balances the probative value of the evidence against its prejudicial impact. *Commonwealth v. Schwartz*, 419 Pa.Super. 251, 615 A.2d 350, 359 (1992). The trial court determines whether evidence is relevant and admissible, and the trial court's ruling on admissibility will not be disturbed absent an abuse of discretion. *Commonwealth v. Carter*, 443 Pa.Super. 231, 661 A.2d 390, 393 (1995).

¶ 13 Likewise, admissibility of expert testimony is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Commonwealth v. Bardo*, 551 Pa. 140, 154, 709 A.2d 871, 878 (1998), *cert. denied, Bardo v. Pennsylvania*, —— U.S. ——, 119 S.Ct. 350, 142 L.Ed.2d 289 (1998); *Commonwealth v. Harris*, 550 Pa. 92, 107, 703 A.2d 441, 448 (1997), *cert. denied, Harris v. Pennsylvania*, —— U.S. ——, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998). It has long been established that expert opinion testimony is proper only " 'as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman.' " *Commonwealth v. Johnson*, 456 Pa.Super. 251, 690 A.2d 274, 276 (1997) (quoting *Commonwealth v. O'Searo*, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976)). However, expert testimony may not be used to bolster the credibility of witnesses because witness credibility is solely within the province of the jury. *Johnson*, 690 A.2d at 276.

¶ 14 The report of Dr. Mechanick, which was introduced into evidence at the pre-trial hearing, elaborated on the symptoms associated with post-traumatic stress syndrome. Dr. Mechanick further stated in his report that he believed that Appellee was suffering from post-traumatic stress syndrome, and enumerated the symptoms exhibited by Appellee that had led him to that conclusion. He also explained how phobias associated with post-traumatic stress syndrome could cause a heightened level of alertness, guardedness and expectation of harm.[3]

¶ 15 We conclude that this evidence is relevant and probative of Appellee's state of mind on the issue of self-

---

**3.** We note that Dr. Mechanick further opined in his report that Appellee was particularly predisposed and preconditioned to interpret experiences as posing a risk to him and, given the circumstances as alleged by Appellee, the post-traumatic stress syndrome affected Appellee's subjective belief that he was in danger of imminent death or serious bodily injury. It appears that this opinion would be inadmissible at trial as it invades the province of the jury and impermissibly bolsters Appellee's credibility. *See O'Searo, supra* (holding that proposed testimony of a psychiatrist who would have testified at defendant's murder

defense, which requires a subjective belief of danger or death. Appellee does not request that we recognize post-traumatic stress syndrome as a separate defense, as the Commonwealth suggests. The syndrome does not represent a defense to the crimes charged, but rather, is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense. Psychiatric testimony has long been held admissible to prove a defendant's subjective belief that he or she is in danger of imminent death or serious bodily injury. *Commonwealth v. McCloud*, 309 Pa.Super. 316, 455 A.2d 177, 179 (1983). *See also Commonwealth v. Stonehouse*, 521 Pa. 41, 555 A.2d 772 (1989) (plurality) (holding that trial counsel was ineffective for failing to present expert testimony on the battered woman syndrome as a defense to homicide charges); *Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974) (finding that psychiatric testimony was admissible to show whether defendant acted out of an honest, bona fide belief that he was in imminent danger at time he killed victim for purposes of establishing defense of self-defense); *Commonwealth v. Sheppard*, 436 Pa.Super. 584, 648 A.2d 563 (1994) (providing that testimony of paranoid personality disorder was admissible to show if defendant had a bona fide belief he was in danger in a homicide case, although denial of introduction of such testimony by trial court was not fatal, as paranoid personality disorder did not permit claim of imperfect self-defense to be used to reduce offense from murder to voluntary manslaughter); *Commonwealth v. Miller*, 430 Pa.Super. 297, 634 A.2d 614 (1993) (*en banc*) (holding that evidence of battered woman syndrome was admissible in homicide trial as probative evidence of defendant's state of mind as it relates to a theory of self-defense).

¶ 16 Although the majority of the cases in this area have been in the context of homicide and concern the admissibility of evidence relating to battered woman syndrome,[4] we can find no distinction between the evidence analyzed in those cases and the evidence which Appellee seeks to introduce here. The expert testimony of post-traumatic stress syndrome is relevant to Appellee's state of mind and is not introduced to improperly bolster the credibility of Appellee, but rather, to aid the jury in evaluating Appellee's behavior and state of mind. To be successful on a claim of self-defense, "the actor [must show that he] had an honest, bona fide belief he was in imminent danger; [and] second, the belief must be reasonable in light of the facts as they appeared to him." *Sheppard*, 648 A.2d at 568. While the psychiatric evidence is admissible as to Appellee's state of mind and bona fide belief, Appellee must still prove that the objective elements to trigger the belief were present. *Id.*

¶ 17 Order affirmed.

¶ 18 EAKIN, J., files a Concurring and Dissenting Opinion.

EAKIN, J., concurring and dissenting:

¶ 1 Although I find the trend of allowing psychiatric opinions about common sense phenomenon regrettable, I cannot find the learned trial court abused its discretion in deciding to allow the opinion of Dr. Mechanick. If made relevant by appellee's testimony, the testimony is not inadmissible, and I concur in that portion of the majority's decision which affirms this ruling. I also agree the doctor's opinions about questions the jury ultimately must answer should not be allowed.

¶ 2 However, I cannot find appellee's statements to be the product of custodial

---

trial that defendant did not harbor any ill will toward the victim, that defendant had no intention of harming the victim, that the defendant during the scuffle became fearful of a heart attack and drew the gun in order to get people away from him, was properly precluded, as such testimony would have infringed

upon the jury's determination of the credibility of the defendant).

4. We note that battered woman syndrome is recognized under the broader classification of post-traumatic stress disorder. *Stonehouse*, 521 Pa. at 62–63, 555 A.2d at 783.

interrogation, and dissent from that portion of the holding.

¶ 3 Custody is relevant because of its inherently coercive nature. Just as surely, if one is not aware of the custody, it cannot coerce; thus we look to the reasonable perception of the subject, not the facts known to the interrogators. *Commonwealth v. Whitehead*, 427 Pa.Super. 362, 629 A.2d 142, 144 (1993). Accordingly, the existence of a warrant is totally irrelevant; unless this was known by the subject, it cannot affect the subject's perception of custody.

¶ 4 In his own testimony, appellee doesn't suggest he had any inkling a warrant existed, so it is of no consequence at all. The same applies to other facts the majority recites. Repeating he would not have been allowed to leave if he had tried, that he was "more than the focus" of the investigation, and that he was eventually arrested, are all irrelevant. These have nothing to do with the perception of custody at the time of the statement. That these facts are repeatedly mentioned by the suppression court and the majority is troubling, as they are clearly of no analytical consequence. If they are removed from the analysis, what is left that suggests appellant had any reasonable perception of being in custody? The only other fact in the whole of the suppression record suggested to be custodial is that one officer was standing; why this suggests custody, I do not know.

¶ 5 Appellee testified the officers told him "it would be appreciated" if he'd come to the station. The officers told him they knew there were two sides to the story of the shooting, and they just wanted his version. The officers asked appellee when it suited him to come in. When appellee chose to appear when he was not expected, he walked away without restraint. When he reappeared, it was again at a time of his choosing.[5]

¶ 6 At the station, the officers simply asked if he had anything to say; he said he did not. While this qualifies as interrogation, the officers were hardly giving him the third degree. He was sitting in a juvenile division office with two doors. He stated the officers acted like gentlemen. They treated him respectfully. The entire event took only "minutes."

¶ 7 If this is custodial, any questioning by officers at a police station must be custodial. We have consistently looked to the totality of the circumstances when determining custody, not simply the location of the interview. *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa.Super.1999). Here those circumstances involve brevity, courtesy, respect, and voluntariness; they do not smack of coercion or custody in any way.

¶ 8 Accordingly I must respectfully dissent.

---

5. The statement the police "demanded" he appear just isn't supported in the record. While appellee says they told him they'd send someone for him if he didn't come in, he'd already agreed to come in. He responded "fine."