J-A13023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

QUINTELLE RANKIN,

Appellant

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 468 WDA 2014

Appeal from the Judgment of Sentence November 18, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011400-2012

BEFORE:  PANELLA, SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 24, 2015**

Appellant, Quintelle Rankin, appeals from the judgment of sentence entered on November 18, 2013, following his conviction by a jury on August 19, 2013, of second-degree murder; robbery, serious bodily injury; conspiracy; and carrying a firearm without a license.  We affirm.

The trial court summarized the facts of the crime as follows:

> The convictions in this case are based heavily on the testimony of Cory Estes.  Mr. Estes is the nephew of [Appellant,] and he is related to the co-defendant, Eugene McCarthy,[1] by marriage.  At the time of trial, Mr. Estes was 19 years old.  At trial, Mr. Estes testified that on August 7, 2012, he was at the Brinton Manor Apartments.  He met [Appellant] and Mr. McCarthy around noon that day.  They then left that area

---

[1]  Appellant's co-defendant was convicted of third-degree murder, robbery, and conspiracy and received an aggregate sentence of thirteen to twenty-six years of imprisonment.  His direct appeal is pending at 11 WDA 2014.

together in Mr. McCarthy's car and proceeded to the Hill District area of Pittsburgh attempting to locate someone from whom they could purchase marijuana. Having been unsuccessful in their efforts to obtain marijuana, they then left that area and drove to McKeesport, Pennsylvania, to continue their efforts to purchase marijuana. At approximately 4:00 p.m., they returned to the Brinton Manor Apartments because they were unsuccessful in reaching their goal to obtain marijuana. While they were still in the car, Mr. McCarthy stated aloud that it appeared as though there were some "licks" in the area. Mr. Estes testified that the term "licks" referred to persons who were potential robbery targets. Mr. McCarthy parked the car and the three men began to walk around the area. They soon encountered two other men and asked those men if they could get them marijuana. One of the other men, Brandon Johns, directed Mr. Estes, [Appellant] and Mr. McCarthy to follow him into a building. All four men entered the building. Mr. Estes testified that Brandon Johns then sat down on steps and pulled out a scale and large bag of marijuana and discussed cost. The scale and marijuana were recovered from the scene. At that point, Mr. McCarthy attempted to steal the marijuana by grabbing the bag of marijuana and telling Brandon Johns that "you might as well give me all the shit." A few seconds later, [Appellant] pulled out a gun. Brandon Johns then stated "you can have it all." He then reached with both hands into his pockets and he pulled out a black handgun. Mr. Estes testified that Mr. McCarthy and Brandon Johns began to "tussle" over the black handgun. Mr. Estes ran up the steps of the building and, as he was running, he heard a gunshot. He testified that he did not know who fired it. Mr. Estes heard another shot and he observed his uncle, [Appellant], slump over as though he had been shot. [Appellant] then fired his weapon at Brandon Johns. Mr. Estes believed he heard three or four gunshots. A nearby witness, who was outside of the building, testified that he heard approximately six gunshots. In total, eight spent cartridges were found at the scene. Six .40 caliber Smith & Wesson cartridges were found at the scene and two .380 caliber cartridges were found. [Appellant] admitted at trial that he possessed a .40 caliber handgun during the incident and he did shoot Brandon Johns. Mr. Estes testified that immediately after the shooting, the three men left the scene and Mr. McCarthy drove [Appellant] to the hospital. Mr. McCarthy and [Appellant] were subsequently arrested. . . .

Trial testimony also established that Brandon Johns died from multiple gunshot wounds to his neck and chest. **He was shot seven times**. He was shot twice in the neck. One wound was in the back of the neck and one was in the front of the neck. Because of the gunpowder stippling on the skin, trial testimony indicated that these shots had been fired within four inches of the skin. He was also shot in the right shoulder, the right upper back, the right lower chest, the left posterior shoulder and the right anterior thigh.

Trial Court Opinion, 7/19/14, at 1–3 (emphasis added).

On November 18, 2013, the trial court sentenced Appellant to a term of life imprisonment for murder, a consecutive term of five to ten years of imprisonment for conspiracy, and a consecutive term of imprisonment of three and one-half to seven years for the firearms charge. No further penalty was imposed for robbery. Appellant filed a post-sentence motion on November 27, 2013, and on December 4, 2013, the trial court granted a thirty-day extension beyond the filing date of the notes of testimony to permit the filing of a supplemental motion, pursuant to Pa.R.Crim.P. 720(B)(3)(b). Appellant filed a supplemental post-sentence motion on February 25, 2014. The trial court denied both motions on March 14, 2014. Appellant then filed a timely notice of appeal on March 24, 2014. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I. Was Quintelle Rankin erroneously convicted of second degree murder violating his rights under the U.S. Const. Amend. XIV and PA. Const. Art. 1, § 9, insofar as the Commonwealth failed to prove beyond a reasonable doubt that he did not act in self-defense and in defense of others?

- 3 -

II.  Was Quintelle Rankin erroneously convicted of second degree murder, robbery and conspiracy to commit robbery violating his rights under the U.S. Const. Amend. XIV and PA. Const. Art. 1, § 9, insofar as the Commonwealth failed to prove beyond a reasonable doubt that he committed or attempted to commit a robbery, or was an accomplice in the commission of a robbery, or that he agreed to commit a robbery or to aid in the commission of a robbery?

Appellant's Brief at 5 (full capitalization omitted).

Both of Appellant's issues challenge the sufficiency of the evidence. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119 (Pa. 2013). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. James*, 46 A.3d 776 (Pa. Super. 2012). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Vogelsong*, 90 A.3d 717 (Pa. Super. 2014), *appeal denied*, 102 A.3d 985 (Pa. 2014). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Ratsamy*, 934 A.2d 1233 (Pa. 2007).

In his first issue, Appellant avers that the Commonwealth failed to disprove his theory of self-defense. A claim of self-defense requires evidence establishing the following three elements:

> "(a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat." *Commonwealth v. Samuel*, 527 Pa. 298, 590 A.2d 1245, 1247–48 (1991). *See also Commonwealth v. Harris*, 550 Pa. 92, 703 A.2d 441, 449 (1997); 18 Pa.C.S. § 505.2. Although the defendant has no burden to prove self-defense, . . . before the defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." Once the question is properly raised, "the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627, 630 (1977). The Commonwealth sustains that burden of negation "if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger." *Commonwealth v. Burns*, 490 Pa. 352, 416 A.2d 506, 507 (1980).

*Commonwealth v. Mouzon*, 53 A.3d 738, 740-741 (Pa. 2012).

The Pennsylvania Crimes Code governs self-defense and provides, in relevant part, as follows:

**§ 505.  Use of force in self-protection**

**(a)  Use of force justifiable for protection of the person.—**
The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b)  Limitations on justifying necessity for use of force.—**

* * *

(2)  The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i)  the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii)  the actor knows that he can avoid the necessity of using such force with complete safety by retreating. . . .

18 Pa.C.S. § 505(a)-(b); *Commonwealth v. Smith*, 97 A.3d 782, 786 (Pa. Super. 2014).

Appellant asserts that he believed he was in imminent danger of death or serious bodily harm and that it was necessary to use deadly force against Brandon Johns (the "victim") to prevent such harm.  Appellant's Brief at 22. In making this claim, Appellant relies upon his own version of the events set forth in his trial testimony, as follows:  Appellant stated that as soon as he, Mr. Estes, and Mr. McCarthy entered the building as they followed the victim, Mr. McCarthy asked Appellant if he was going to "pitch in" for the marijuana.  N.T. Volume III, 8/5–16/13, at 1375.  Appellant responded that he wanted to buy his own.  *Id*.  Confusingly, despite claiming that he did not want to "pitch in," Appellant testified, "I'm going [in] to my pocket to pull my money out," when "all of a sudden a shot goes off."  *Id*.  Appellant

claimed that he knew he had been shot, "[s]o I pulled my gun out, and I took it off safety, and I fired it." Appellant stated, "I had my eyes closed tight. I'm in panic mode. I'm just firing. Like uncontrollably." *Id*. at 1376. Appellant testified that Mr. McCarthy ran outside, and he and Mr. Estes helped Appellant to their automobile and drove him to the hospital. *Id*. at 1377–1379. En route to the hospital, Appellant claimed that he "threw up all over the gun" so he "just tossed it out the window." *Id*. at 1379.

In rejecting this issue, the trial court stated the following:

> The jury was free to make credibility determinations concerning the trial evidence in this case. It is clear from the verdict that the jury believed the testimony of Mr. Estes. Prior to encountering Brandon Johns, Mr. McCarthy spoke aloud that there were "licks" in the area indicating his desire to rob someone. Once [Appellant] and Mr. McCarthy were inside the building with Brandon Johns, Mr. McCarthy attempted to steal [the] marijuana by grabbing a bag of marijuana from Brandon Johns. As Mr. McCarthy attempted to steal the marijuana, [Appellant] brandished his .40 caliber handgun. It is clear from Mr. Estes'[s] testimony that Brandon Johns only attempted to pull his gun after [Appellant] had drawn his weapon. Although [Appellant] testified that Brandon Johns pulled his weapon first, the jury was free to discount that testimony as self-serving and believe Mr. Estes. Additionally, the evidence indicated that Brandon Johns was shot seven times, twice from behind. This evidence is not suggestive that [Appellant] was acting in self-defense or the defense of others. Based on the evidence adduced at trial, this [c]ourt believes the Commonwealth adequately demonstrated that [Appellant] and Mr. McCarthy attempted to rob Brandon Johns by force, thereby provoking the events that led to the deadly shooting. This [c]ourt, therefore, rejects any notion that the evidence was insufficient to disprove that [Appellant] acted in self-defense or in the defense of others.

Trial Court Opinion, 7/19/14, at 6.

We agree with the trial court. The Commonwealth presented the testimony of Mr. Estes, Appellant's nephew and an eye witness to the shooting, who clearly and compellingly established that Appellant: (1) went along with Mr. McCarthy to steal marijuana from the victim; (2) introduced a firearm into the situation; (3) shot the victim multiple times, twice in the back; and (4) three of the gunshot wounds were inflicted within ten centimeters of the victim's body. N.T. Volume 1, 8/5–16/13, at 83, 183–184, 190–192, 194–196. Indeed, Mr. Estes testified that Appellant pulled out his gun **before** the victim displayed his weapon. *Id*. at 201. This evidence, which the jury obviously believed, disproved self-defense. **See**
**Commonwealth v. Jones**, 886 A.2d 689 (Pa. Super. 2005) (although defendant alleged that he shot victim in self-defense, evidence showed that defendant used deadly force, at close range, on a vital part of victim's body, causing death; jury was free to reject defendant's contention that he acted in self-defense).

"Likewise, the Commonwealth can negate a self-defense claim by proving the defendant 'used more force than reasonably necessary to protect against death or serious bodily injury.'" **Commonwealth v. Williams**, 91 A.3d 240, 251 (Pa. Super. 2014) (quoting **Commonwealth v. Truong**), 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*)). Here, the victim sustained a total of seven gunshot wounds, fired from a close range of less than ten centimeters, with at least two shots fired from behind the victim.

N.T. Volume 1, 8/5–16/13, at 78–88. The jury was free to believe this evidence and to conclude it was more force than necessary to protect Appellant or anyone else. In light of the evidence of record, the Commonwealth sustained its burden to disprove self-defense.

In his second issue, Appellant claims that the evidence did not establish that the victim was killed during the perpetration of a felony because the Commonwealth allegedly did not prove that Appellant robbed or attempted to rob the victim, that he was an accomplice to a robbery, or that he participated in a conspiracy to commit robbery. Appellant's Brief at 28. This issue lacks merit.

A person commits second-degree murder when he is a principal, accomplice, or co-conspirator to a statutorily enumerated felony and another person is killed as that felony is committed. 18 Pa.C.S. § 2502(b); **Commonwealth v. Knox**, 50 A.3d 732, 739 (Pa. Super. 2012). The defendant need not be a party to a completed crime; rather, one perpetrates a felony when he engages in or is an accomplice to a completed felony, an attempt to commit a felony, or flight after committing or attempting to commit a felony. 18 Pa.C.S. § 2502(d).

Robbery is among the enumerated felonies that satisfy the predicate-offense element of second-degree murder. 18 Pa.C.S. § 2502(d). A person commits robbery where, *inter alia*, in the course of committing a theft, he inflicts or threatens serious bodily injury on another, commits or threatens

immediately to commit any felony of the first or second degree, or takes or removes property from the person of another by force however slight. 18 Pa.C.S. § 3701(a)(1). The evidence is sufficient to sustain a robbery conviction where the defendant intentionally assists his cohort with the robbery, even if he did not carry a weapon, employ threats, or cause injury. *E.g.*, *Commonwealth v. Everett*, 443 A.2d 1142, 1145 (Pa. Super. 1982) (evidence that the appellant facilitated a co-defendant's act was sufficient evidence for the jury to conclude that the appellant committed robbery). An act shall be deemed in the course of committing a theft if it occurs in an attempt to commit theft or in flight after the attempt or commission. 18 Pa.C.S. § 3701(a)(2). "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). "That circumstances made it such that appellant and his accomplices failed to obtain and remove money (or other valuables) is irrelevant because proof of an attempted theft is sufficient to establish the 'in the course of committing a theft' element of robbery." *Commonwealth v. Sanchez*, 36 A.3d 24, 41–42 (Pa. 2011).

A person is guilty of conspiracy to commit a crime if:

with the intent of promoting or facilitating its commission, he 1) agrees with another person or persons that one or more of them will engage in conduct that constitutes such crime or an attempt or solicitation to commit such crime, or 2) agrees to aid such other person(s) in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

- 10 -

18 Pa.C.S. § 903. Additionally, where, as here, a defendant agrees with others to commit the underlying felony, he remains liable for all actions of his co-conspirators taken in furtherance of their conspiracy. 18 Pa.C.S. § 903; *Commonwealth v. McCall*, 911 A.2d 992, 996–997 (Pa. Super. 2006).

Appellant asserts that the Commonwealth's evidence failed to establish a plan or agreement between himself and Eugene McCarthy. When viewed in the light most favorable to the Commonwealth, Eugene McCarthy made it clear to both Appellant and Mr. Estes that he had identified some "licks," meaning robbery targets, from whom to obtain marijuana, and Appellant was complicit in this plan. N.T. Volume 1, 8/5–16/13, at 185–186.

We agree with the trial court that the evidence presented at trial was sufficient to support the verdict, and we reiterate with approval the trial court's explanation, as follows:

> A review of the record reflects that [Appellant] was involved in the perpetration of a robbery, an enumerated felony in 18 Pa.C.S.A. §2502(d), when the killing of the victim occurred. The evidence in this case clearly supported the verdict of second-degree murder. As set forth above, Mr. Estes'[s] testimony established that Mr. McCarthy came up with the idea to find some "licks." Shortly after making that statement, Mr. McCarthy and [Appellant] encountered Brandon Johns. Once the men were inside the building, Mr. McCarthy stole the marijuana by force as [Appellant] was pointing a gun at Brandon Johns. [Appellant] then shot Brandon Johns seven times, both in the back and front of his body. The actions of Mr. McCarthy and [Appellant] were clearly coordinated and the jury was free to believe that [Appellant's] shooting of Brandon Johns occurred during the commission of the robbery of Brandon Johns.

Trial Court Opinion, 7/19/14, at 9. We concur with the trial court and conclude the evidence, when viewed in the light most favorable to the Commonwealth, as verdict winner, was sufficient to support Appellant's convictions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2015