J-S74006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WARREN MILLER | |
| Appellant | No. 657 EDA 2016 |

Appeal from the Judgment of Sentence January 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012957-2013

BEFORE:  OTT, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 14, 2016**

Appellant Warren Miller appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted him of First-Degree Murder, Recklessly Endangering Another Person (REAP), Possession of an Instrument of Crime (PIC), Firearms not to be Carried Without a License, and Carrying Firearms in Public in Philadelphia.[1]  Appellant argues that there was insufficient evidence to support his convictions, contending that the Commonwealth failed to disprove his claim of self-defense and show he acted with malice.  After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 2705, 907(a), 6106(a)(1), and 6108, respectively.

The trial court aptly summarized the factual background of this case as follows:

On the evening of August 14, 2012, Ramses Everett, his brothers Jamar and Amir Everett, and friend Keith Gant played basketball in Fairmount Park, 5200 Parkside Avenue, in Philadelphia. On the nearby benches, [Appellant] and his brother Jaylen smoked marijuana.

At approximately 7:30 p.m., Aara "Azza" Fisher, escorted her friend, the decedent Lite Belesky, to the park…, where he sought to purchase crack cocaine. At or about 7:45 p.m., Belesky called his paramour, Debra Cosenza, to come pick him up, as he was intoxicated on Xanax and alcohol and feared becoming embroiled in a dispute.

After the phone call, Belesky approached [Appellant] and Jaylen Miller and asked them to sell him crack cocaine. [Appellant] refused and pointed a black .45 caliber pistol at Belesky.

At approximately 8:00 p.m., Cosenza drove near 5200 Parkside Avenue, where she saw Belesky argue with a group of men from 100 feet away. Niema Bray, who drove along Parkside Ave. prior to the shooting, saw Belesky stand in front of [Appellant] with his hands in the air, as if he was trying to surrender. Consanza attempted to call Belesky's phone but suddenly heard five or six shots ring out and saw Belesky fall down. Ramses Everett saw [Appellant] stand over Belesky and fire three shots into his prone back, stopping only because the magazine had emptied. Bray also witnessed [Appellant] stand over Belesky and shoot him in the back. Ramses, Jamar, and Amir Everett and Gant fled the park via Aberdeen Street. Bray observed [Appellant] hide a weapon in his pants and flee behind Ramses' group.

At 8:02 p.m., Officer Daniel Barr and Detective Matthew Carey independently received a radio call for shots fired. At 8:10 p.m., law enforcement officers discovered a hysterical Cosenza screaming near Belesky's unresponsive body. Law enforcement discovered no weapons near the body. Medics arrived and pronounced Belesky dead at the scene.

According to Philadelphia Deputy Medical Examiner Dr. Albert Chu, an expert in forensic pathology, Belesky sustained five gunshot wounds, including fatal, penetrating wounds to the left lateral back, the left lateral lower chest, and left lower center back. Belesky further suffered two perforating gunshot wounds to the left lateral lower back and to the right posterior proximal thigh. The medical examiner recovered three projectiles from the body and submitted them to the Police Department. The wounds to Belesky's back and right thigh were consistent with Belesky falling face down from the leg wound and sustaining three gunshot wounds caused by a shooter standing above and behind his body. Dr. Chu concluded, to a reasonable degree of medical certainty, that the cause of death was homicide by multiple gunshot wounds.

The Philadelphia Police Crime Scene Unit discovered eleven fired cartridge casings ("FCCs") at the crime scene. Officer Norman DeFields, a ballistics expert with the Firearms Identification Unit, examined each of the FCCs and concluded, to a reasonable degree of scientific certainty, that all were fired from the same .45 caliber pistol. Officer DeFields further determined that the recovered projectiles were .45 caliber and fired from the same weapon as the FCCs.

In September 2012, Saheed Hasson, [Appellant's] friend who was in Upper Darby at the time of the shooting, visited [Appellant] at an apartment near the crime scene. During the ensuing conversation, [Appellant] admitted to shooting Belesky in the chest and leg on the evening of the murder, and firing three more rounds into Belesky's back after he fell to the ground. On September 20, 2012, Detective Gregory Rodden interviewed Hasson at the Homicide Unit, where Hasson recounted the contents of his and [Appellant's] conversation and revealed that [Appellant] possessed a black and silver .45 caliber pistol prior to the shooting.

On October 1, 2013, Officers James Cook and Alfred Hendley arrested [Appellant] and escorted him to Homicide for questioning. Since assigned Detectives Rodden, Gary White, and Crystal Williams were investigating an unrelated homicide at the time, they were precluded from conducting a formal interview until 10 a.m. on October 2, 2013. During the interview conducted at 11:40 a.m., [Appellant] told detectives that he

- 3 -

fired the entire magazine of his black .45 pistol at Belesky in self-defense. [Appellant] further stated that Belesky wielded a knife during the incident and that [Appellant] abandoned his pistol in the park.

On October 23, 2012, police arrested Ramses Everett on unrelated sexual assault charges. On October 25, while Ramses Everett remained in custody, Detective Robert Fetters interviewed him about the August homicide. During the interview, Ramses Everett identified [Appellant] as the shooter, [Appellant's] black .45 caliber pistol as the murder weapon, and described how [Appellant] shot the prone Belesky.

Trial Court Opinion, 4/22/16, at 2-5 (internal citations omitted).

After Appellant was charged with first-degree murder and related charges, he proceeded to a jury trial. On March 30, 2015, the Honorable Steven R. Geroff declared a mistrial when the jury could not return a verdict. On January 12, 2016, Appellant was again tried before a jury, who convicted Appellant on all the aforementioned charges. On the same day, Appellant was given a mandatory life sentence without parole for the first-degree murder conviction and concurrent sentences of one to two years imprisonment for the Firearms Not to be Carried Without a License conviction, three to twelve months for the Carrying Firearms in Public in Philadelphia conviction, and three to twelve months for the REAP conviction.

On January 22, 2016, Appellant filed a timely post-sentence motion which the trial court denied on January 26, 2016. Appellant filed a timely notice of appeal on February 22, 2016. On February 24, 2016, the trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On March 11, 2016, Appellant

filed a *pro se* Concise Statement. On March 18, 2016, John Belli, Esq. entered his appearance as Appellant's counsel and filed a Concise Statement on April 19, 2016. In its responsive opinion pursuant to Rule 1925(a), although the trial court asserted that Appellant had waived his claims by failing to file a timely 1925(b) statement, the trial court reviewed the merits of Appellant's proposed sufficiency challenges.

As an initial matter, we must review the trial court's assertion that Appellant has waived all his claims by failing to file a timely 1925(b) concise statement. From our review of the record, we note that Appellant's trial counsel, Leon Goodman, Esq. seemingly abandoned Appellant after he filed a timely notice of appeal on Appellant's behalf. While the docket indicates that the trial court's order directing Appellant to file a 1925(b) statement was sent to Atty. Goodman, it is unclear why Atty. Goodman did not respond or seek to formally withdraw his representation. The trial court then appointed Appellant's current counsel, John Belli, after the time to file a timely 1925(b) statement had elapsed. Atty. Belli then filed a 1925(b) statement, but did not expressly seek permission to do so *nunc pro tunc*.

However, this Court has emphasized that both the complete failure to file a 1925(b) statement and the untimely filing of a 1925(b) statement constitute *per se* ineffectiveness in which prejudice is legally presumed, as an attorney has no reasonable basis designed to effectuate the client's interest for doing so and waives all issues for appeal. ***Commonwealth v. Burton***, 973 A.2d 428, 432–33 (Pa.Super. 2009). As stated above, it does

not appear from the record that Appellant's trial counsel properly sought to withdraw his representation, leaving Appellant without counsel to file his 1925(b) statement. We note that Atty. Belli could not have filed a timely 1925(b) statement on Appellant's behalf as he was appointed after the time limit for doing so expired. Thus, Appellant's failure to file a timely 1925(b) statement was a result of his trial counsel's *per se* ineffectiveness.

Pennsylvania Rule 1925(c)(3) provides that "[i]f an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement nunc pro tunc and for the preparation and filing of an opinion by the judge." Pa.R.A.P. 1925(c)(3). Moreover, in the case of an untimely filing, this Court has decided the appeal on the merits when the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal. **Burton**, 973 A.2d at 433. Since the trial court in this case filed an opinion addressing the claims raised in Atty. Belli's untimely 1925(b) statement, there is no need to remand the case and we may proceed to review the merits of this appeal.[2]

_____

[2] We also note that Appellant filed a *pro se* concise statement within the applicable time period under Rule 1925(b). As a general rule, our courts prohibit hybrid representation and do not typically entertain *pro se* filings while an appellant is represented by counsel. **See Commonwealth v. Ali**, 608 Pa. 71, 89, 10 A.3d 282, 293 (2010); **Commonwealth v. Ellis**, 534 Pa.
*(Footnote Continued Next Page)*

Appellant raises the following issues for our review:

A. Must Appellant's first-degree murder conviction be reversed because the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that Appellant acted with malice and that Appellant did not kill the decedent in self-defense or defense of others?

B. Must Appellant's first PIC and REAP convictions [sic] be reversed because the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that Appellant did not call the decedent in self-defense or in defense of others?

Appellant's Brief, at 3.

In evaluating a challenge to the sufficiency of the evidence, our standard of review is as follows:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*(Footnote Continued)* ─────────────

176, 180-81, 626 A.2d 1137, 1139–40 (1993). ***But see Commonwealth v. Cooper***, 611 Pa. 437, 27 A.3d 994 (2011).

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

In his sufficiency claims, Appellant claims his first-degree murder conviction cannot stand because there was no evidence that he acted with malice. Our Legislature defines first-degree murder as an intentional killing, that is "willful, deliberate, and premeditated." 18 Pa.C.S. § 2502(a), (d). To sustain a conviction of first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: "(1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and a specific intent to kill." *Commonwealth v. Sanchez*, 614 Pa. 1, 23-24, 36 A.3d 24, 37 (2011). Our Supreme Court has emphasized that "the finder of fact may infer malice and specific intent to kill based on the defendant's use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Hitcho*, ___Pa.___, 123 A.3d 731, 746 (2015) (citing *Commonwealth v. Arrington*, 624 Pa. 506, 86 A.3d 831, 840 (2014), *cert. denied,* ___U.S. ___, 135 S.Ct. 479, 190 L.Ed.2d 363 (2014)).

In this case, the Commonwealth presented evidence from several eyewitnesses that Appellant shot the unarmed victim in the chest and the thigh. Even after the victim fell to the ground, Appellant continued to fire shots into the victim's back. Consistent with *Hitcho, supra*, it was reasonable for the jury to infer that Appellant acted with malice and intended to kill the victim as he shot the victim several times in vital parts of

the victim's body. Thus, the Commonwealth presented sufficient evidence to show Appellant acted with malice and intended to kill the victim.

Appellant does not specifically challenge any other elements of the crimes of which he was convicted, but argues that there is insufficient evidence to support all of his convictions as the Commonwealth failed to disprove that he acted in self-defense or in the defense of others. Appellant concedes that he did shoot the victim, but only did so after the victim threatened him with a knife.

Section 505 of the Crimes Code authorizes the use of force for self-protection under the following circumstances: "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion. 18 Pa.C.S. § 505. Our Supreme Court has further clarified:

> By way of background, a claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat." ***Commonwealth v. Samuel***, 527 Pa. 298, 590 A.2d 1245, 1247–48 (1991). ***See also Commonwealth v. Harris***, 550 Pa. 92, 703 A.2d 441, 449 (1997); 18 Pa.C.S. § 505.[2] Although the defendant has no burden to prove self-defense, *…* before the defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." Once the question is properly raised, "the burden is upon the Commonwealth to prove beyond a

reasonable doubt that the defendant was not acting in self-defense." *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627, 630 (1977).

*Commonwealth v. Mouzon*, 617 Pa. 527, 531–32, 53 A.3d 738, 740 (2012).

In this case, there is no evidence to justify a finding that Appellant acted in self-defense. The record reveals that three eyewitnesses testified that the victim did not lunge at Appellant with a knife. In fact, one witness testified that the victim had his hands in the air in an attempt to surrender when he was first shot by Appellant. Even after the victim fell face down on the ground, the eyewitnesses observed Appellant unloading his firearm into the victim's back. The responding officers did not find a knife on the victim's body or anywhere near the crime scene. From this evidence, it was rational for the jury to infer that Appellant's claim that the victim was armed was false, find incredible Appellant's claim that he reasonably believed it was necessary to use deadly force as the victim placed his life in danger. Accordingly, we conclude the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant did not act in self-defense.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2016