J-S51045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY JAMES KLINE | : | |
| | : | |
| Appellant | : | No. 187 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 22, 2019
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000669-2018

BEFORE: MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: JANUARY 21, 2021**

Zachary James Kline (Appellant) appeals from his judgment of sentence entered in the Court of Common Pleas of Adams County, raising two evidentiary issues.[1] We affirm.

The facts adduced at Appellant's June 3, 2019, jury trial are recounted by the trial court as follows:

> Detective Eric Beyer testified he is a county detective for the Adams County District Attorney's Office and his duties include working on the Adams County Drug Task Force and as a municipal firearms instructor. He has been a county detective for approximately five years, and previously worked as a police officer in Pennsylvania for twenty years. Detective Beyer has served on the Adams County Drug Task Force for approximately ten years. As a member of the Adams County Drug Task Force, Detective

---

[1] Counsel is gently reminded that an appeal lies from the judgment of sentence, not the denial of post-sentence motions. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). Our Prothonotary has corrected the caption accordingly.

Beyer investigates controlled substance violations in Adams County.

Detective Beyer has significant firearms training. After graduation from high school, Detective Beyer enlisted in the United States Army where he trained as a rifleman. Detective Beyer previously worked at his family's gun shop in Baltimore, Maryland for approximately three years. While at the police academy, he went through a handgun and shotgun training course. The handgun course was forty-four hours long. Detective Beyer is a municipal firearms instructor and instructs other law enforcement officers on the use of firearms, marksmanship training, tactics, safety, and gun care procedures. Detective Beyer has a private interest in firearms, owning numerous firearms over the course of his life. Through his training and experience he is able to identify different calibers and models of handguns. Detective Beyer testified he is adept at identifying modern handguns by sight. His curriculum vitae, outlining his training and experience with firearms, was admitted into evidence. Detective Beyer was recognized by the [c]ourt as an expert in the identification of modern firearms.

Detective Beyer testified that on August 30, 2017, he was working with a Confidential Informant ("CI") on a controlled substance investigation. The CI informed Detective Beyer he knew individuals who were selling drugs and provided Detective Beyer's undercover cellphone number to those individuals. Detective Beyer testified he told the CI to inform those individuals that he was available to purchase drugs from them.

On August 30, 2017, Detective Beyer received a text message on his undercover cellphone, engaged in a text message conversation, and made arrangements to purchase an ounce of marijuana for $250.00 from an unknown individual. Detective Beyer arranged the drug transaction for Friday (September 1, 2017). On Friday, September 1, 2017, Detective Beyer sent a text message to the phone number that had texted him on August 30, 2017. Detective Beyer made arrangements to purchase marijuana from the individual at the Walmart in Straban Township, Adams County, Pennsylvania.

Detective Beyer arrived at the Straban Township Walmart around 3:15 [p.m.], posing as a Walmart employee. Detective Stephen Higgs provided surveillance for Detective Beyer.

- 2 -

Detective Higgs staged himself in an unmarked vehicle at a vantage point in the parking lot so he could observe the undercover transaction.

Prior to the transaction, Detective Beyer engaged in text message conversations with the individual. The individual texted Detective Beyer's undercover cellphone "pulling in" and "I don't see you" at 3:42 [p.m.] At 3:45 [p.m.], Detective Beyer texted the individual with a description of himself. Detective Beyer observed a red Jeep enter the Walmart parking lot with two females in the front seats and [Appellant] in the back seat. The red Jeep parked next to Detective Beyer's Black Toyota Matrix. Detective Beyer approached the passenger side of the red Jeep, opened the passenger side rear door and observed [Appellant] sitting in the middle of the back seat. Detective Beyer observed the handle of a Ruger revolver sticking out of [Appellant's] waistband. Detective Beyer introduced himself to [Appellant] and [Appellant] asked if he had the money. Detective Beyer showed $250.00 to [Appellant. Appellant] pulled out a tan cloth zippered pouch, unzipped it, removed a bag of suspected marijuana and handed it to Detective Beyer. Detective Beyer gave [Appellant] $250.00.

Detective Beyer engaged [Appellant] in a text message conversation after the transaction on September 1, 2017. At 4:44 [p.m.], Detective Beyer texted [Appellant] and complimented him on the quality of his marijuana. [Appellant] responded "only exotics, bro, that's why the dollar sign, strap, I can get better and cheaper, you let me know I have hash and wax too." Detective Beyer responded "what kind of strap was that?" Detective Beyer testified "strap" is a street term for a gun. [Appellant] responded that it was a Ruger SP 101 .357. Detective Beyer testified a Ruger SP 101 .357 is a five-shot revolver manufactured by Sturm, Ruger and Co.

On August 31, [2017], Detective Beyer located a Facebook profile for a Zachary Kline, which contained pictures and videos of [Appellant]. Detective Beyer viewed a video on the Facebook page dated August 29, 2017 which showed [Appellant] wearing the same black and red plaid jacket he wore on September 1, 2017 during the marijuana transaction. Detective Beyer testified the video depicted [Appellant] holding a Ruger SP 101 handgun. Detective Beyer testified he identified the handgun by its distinctive rubberized grip and inlay in the grip. Detective Beyer

- 3 -

testified the handgun was operable because the hammer, the cylinder, and the trigger were all in place and all parts needed to make the firearm operable were visible in the screenshot. Detective Beyer testified the handgun he saw in [Appellant's] waistband during the September 1, 2017 transaction was the same Ruger SP 101 observed in the video and screenshot. Detective Beyer testified that it was his opinion, based on his training, experience, and observations that [Appellant] was in possession of an operable handgun during the drug transaction in the Walmart parking lot on September 1, 2019.

Detective Beyer testified that after [Appellant's] arrest, during [Appellant's] processing, [Appellant] provided a cellphone number which was the same cellphone number used to text Detective Beyer on August 30, 2017 and September 1, 2017. In addition, there was a stipulation that [Appellant] did not possess a valid or lawful concealed carry permit on September 1, 2017.

The jury found [Appellant] guilty of [possession of a controlled substance with the intent to deliver, criminal use of a communication facility, and possession of a firearm without a license. *See* 35 P.S. § 780-113(a)(30), 18 Pa.C.S. §§ 7512(a), 6101(a)(1). The trial court also found Appellant guilty of persons not to possess firearms. *See* 18 Pa.C.S. § 6105(c)(9)(i)]. On August 22, 2019, this [c]ourt sentenced [Appellant] to 15 to 30 months in a state correctional institution for delivery of a controlled substance, 18 to 36 months in a state correctional institution for criminal use of a communication facility, 24 to 48 months in a state correctional institution for firearms not to be carried without a license, and 12 to 24 months in a state correctional institution for persons not to possess firearms. The aggregate sentence imposed was 42 to 84 months in a [state correctional institution].

Trial Ct. Op., 12/31/19, at 1-4 (footnotes omitted). Appellant filed a timely post-sentence motion, which the trial court denied on December 31, 2019. This timely appeal followed.[2]

Appellant presents the following issues for our review:

---

[2] Appellant and the trial court complied with Pa.R.A.P. 1925.

1.    Did the trial court commit reversible error when it qualified Detective Eric Beyer as an expert in the identification of modern firearms over defense objection?

2.    Did the trial court commit reversible error when it permitted [Detective Beyer] to testify regarding his observation of a video on social media that was not preserved for trial, made available to the defense, or was otherwise discoverable in violation of the best evidence rule?

Appellant's Brief at 4.

Appellant argues that Detective Beyer has no special knowledge to qualify him as an expert and lacks the necessary prerequisites of specialized knowledge, skill, experience, training, or education to be qualified as an expert in modern firearm identification. Appellant's Brief at 11. Appellant points out that Beyer had never been qualified as an expert in identifying modern firearms before, and has no special training on identifying handguns in general or specifically Ruger handguns. *Id.* at 12. Appellant argues that Beyer was permitted to testify that the gun he believed he saw during the marijuana transaction was a Ruger SP101, though Beyer acknowledged he could see only the grip and hammer area. *Id.* at 13. "This error resulted in an expert opinion on the ultimate question to be decided: possession of a firearm and operability." *Id.*

The Commonwealth responds that Detective Beyer's training and experience are more than sufficient to support the trial court's recognition of his expertise. Commonwealth's Brief at 7. Because our Supreme Court has found an owner of a gun store to be an appropriate expert witness in firearms identification, *see Commonwealth v. Harris*, 703 A.2d 441 (Pa. 1997),

Beyer's experience at his family's gun store, combined with his police and military training on firearms, amply supported the trial court's ruling. Commonwealth's Brief at 9-10.

These are evidentiary issues, and we apply an abuse of discretion standard. *See Commonwealth v. Orie*, 88 A.3d 983, 1022 (Pa. Super. 2014). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014). "Whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court." *W. Philadelphia Therapy Ctr. v. Erie Ins. Grp.*, 751 A.2d 1166, 1167 (Pa. Super. 2000) (citation omitted). Expert witness testimony is governed by Pa.R.E. 702. "Pennsylvania's standard for qualifying a witness as an expert is rather liberal — if the witness possesses knowledge with regard to subject matter that is beyond the knowledge, information, or skill possessed by the ordinary juror, he or she may testify." *Id.* at 1167-68.

We find no problem with the trial court qualifying Detective Beyer as a firearms expert. The trial court's thorough recitation of Detective Beyer's experience and qualifications more than satisfies our "rather liberal" standard, and we also observe that just because a particular witness has been deemed an expert by a trial court does not mean that adverse cross-examination

cannot be vigorous and skeptical. Counsel is not required to treat a witness qualified by a trial court to give expert testimony with kid gloves. Thus, we cannot grant relief here.

Appellant next argues Detective Beyer should not have been permitted to testify as to an alleged Facebook video that the Commonwealth claims it has no access to as it was subsequently deleted or destroyed. Appellant's Brief at 13; Commonwealth's Brief at 10-11. The Commonwealth presented a screenshot of the video depicting Appellant in possession of what appears to be a Ruger revolver. However, the video did not (to the Court's knowledge) depict the alleged weapon in question being fired. Per the trial court, the Commonwealth attempted to establish operability by having their expert testify that "the handgun was operable because the hammer, the cylinder, and the trigger were all in place and all parts needed to make the firearm operable were visible in the screenshot." Trial Ct. Op. at 3; N.T. Trial, 6/3/19, at 75.[3]

---

[3] Appellant did not lodge an objection after Detective Beyer testified that the gun in the screenshot appeared to be operable "[b]ecause it has the hammer in place. It has the cylinder in place. It had the trigger in place. All the parts that you need to make the firearm operable are visible from this video." *See* N.T. Trial, 6/3/19, at 75. Because Appellant confined his objection to the admissibility of evidence related to the video under the best evidence rule, he has not preserved a sufficiency challenge or an evidentiary challenge specific to this testimony. Operability is a necessary element under Section 6106; *see Commonwealth v. Layton*, 307 A.2d 843 (Pa. 1973) and its progeny. The operability requirement does not apply to Section 6105, which deals with persons not to possess firearms. *See Commonwealth v. Thomas*, 988 A.2d 669, 672 (Pa. Super. 2009). This issue is too glaring to escape our notice, but because it is not currently before us, we may not consider it.

Appellant argues that the trial court committed reversible error by allowing Detective Beyer to testify as to his observations of a Facebook video that was "not preserved for trial, made available to the defense, or [ ] otherwise discoverable" in violation of Pennsylvania's best evidence rule. Appellant's Brief at 13-14. Appellant cites *Commonwealth v. Lewis*, 623 A.2d 355 (Pa. Super. 1993), in which this Court applied the best evidence rule to testimony as to a videotape that purportedly captured the defendant shoplifting. Appellant's Brief at 14-15.

The Commonwealth argues that because the video was at one point available on (what appeared to be) Appellant's Facebook page but was subsequently deleted therefrom, it was unobtainable to the Commonwealth, and thus the screenshot and testimony about the screenshot and video was the most convincing evidence available. Commonwealth's Brief at 10-12. The Commonwealth asserts that the video was lost or destroyed through no bad faith on its part and was within Appellant's control, and therefore the screenshot and related testimony was properly admitted. *Id.* at 10, 12-13. The Commonwealth also asserts that the best evidence rule does not apply because the video was "not essential to prove a claim or to provide a defense." *Id.* at 12.

The "best evidence" rule limits the method of proving the terms of a writing to the presentation of the original writing, where the terms of the instrument are material to the issue at hand, unless the original is shown to be unavailable through no fault of the proponent. *Warren v. Mosites Const.*

***Co.***, 385 A.2d 397, 400 (Pa. Super. 1978). The rule applies to video-format evidence as well. ***Lewis***, 623 A.2d at 358 (best evidence rule applies to videotape to prevent mistransmission of facts that could mislead jury). The rule is codified at Pa.R.E. 1004, which lists four circumstances under which an original is not required and other evidence of a document may be admitted. This is true where the original is lost or destroyed through no bad faith of the proponent, where the original cannot be obtained through judicial process, where the party against whom it would be offered had control of the original and was put on notice that it would be a subject of proof yet failed to produce it, and where the document is not closely related to a controlling issue. Pa.R.E. 1004(a)-(d).

We note that the Commonwealth is mistaken that the video evidence is not closely related to a controlling issue, as the Commonwealth used the screenshot and related testimony to establish operability; ***see*** n.3, ***supra***.[4] Detective Beyer's testimony as to the video and what it depicted is plainly not relevant to the drug charges, and is not necessary for Appellant's conviction under Section 6105, which is supported by Beyer's personal observations during the marijuana transaction and the text message discussion of the

---

[4] Further, we note that circumstantial evidence of ownership, possession, control, or access to a social media account alone is insufficient for authentication of authorship of digital evidence under Pa.R.E. 901(b)(11)(B)(ii), Pennsylvania's rule applying to authentication of digital evidence. ***See, e.g., Commonwealth v. Mangel***, 181 A.3d 1154, 1163 (Pa. Super. 2018) (Facebook account's identifying details, bearing defendant's name, hometown, and high school, were insufficient to authenticate the online and mobile device chat messages as having been authored by defendant).

"strap." Therefore its relevance is limited to Appellant's conviction under Section 6106. However, because there was no objection to the operability testimony, and because the other elements of 6106 were satisfied by evidence having nothing to do with the video, we cannot find a preserved argument that would allow this Court to reverse Appellant's judgment of sentence on this basis.

This Court has applied a harmless error analysis where a trial court errs in admitting evidence in contravention of the best evidence rule but the impact of the error is *de minimis*; *see **Commonwealth v. Green***, 162 A.3d 509, 522 (Pa. Super. 2017) (*en banc*) ("Given this verdict, we hold that any prejudicial effect associated with [the problematic] testimony was *de minimis* by comparison to the properly admitted and uncontradicted evidence of Appellant's guilt."). Besides the operability testimony, the impact of the description of the video is *de minimis* when compared to Detective Beyer's personal observations during the marijuana buy and the text messages he exchanged with Appellant afterwards.

Detective Beyer apparently did not think to take a video recording with his phone rather than a screenshot. N.T. Trial, 6/3/19, at 62. This is likely insufficient to satisfy the best evidence rule, but any video-of-a-video taken with a cellular phone would be subject to the same objection under the same rule, and thus this is not dispositive. The record does not reflect that Detective Beyer or any of his colleagues contacted Facebook or attempted to use judicial

process (per Pa.R.E. 1004(b)), upon discovering that the video was no longer available on the Facebook page where Beyer initially viewed it.[5]

Any trial court error pertaining to the video testimony would be *de minimis* as it pertains to the drug charges and to the charge of possession of a gun by a person prohibited from doing so, where operability is not at issue. **See Thomas**, 988 A.2d at 672 (evidence of missing spring irrelevant because recovered weapon was designed to shoot bullets and need not be operable to establish elements of 6105 charge). Because there was no specific objection to the operability testimony, and because there is no sufficiency claim before us, no further claim is preserved.[6]

Judgment of sentence affirmed.


Judge Murray joins the memorandum.

Judge McLaughlin concurs in the result.

---

[5] **See** N.T. Trial, 6/3/19, at 64.

[6] Though Appellant raised an objection to the video testimony under the best evidence rule, counsel argued "I'm not objecting to the screenshot, I want that to be clear . . . but now it appears that the officer is going to get into testimony concerning a video . . . ." N.T. Trial, 6/3/19, at 64. Though Detective Beyer was asked about what he observed in the video during the exchange ("[b]ased on your observations of the Ruger SP101 .357 in the video, did it appear to be operable?" "Yes."), the same rationale would have applied to the screenshot, which was not subject to objection, thus rendering any error harmless in this regard. **Id.** at 75.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>01/21/2021</u>